IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CIVIL ACTION NO. 4:17-CV-00136

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| | ) | C O M P L A I N T |
| v. | ) ) | JURY TRIAL DEMAND |
| | ) ) | |
| SENIOR CARE PROPERTIES, INC. D/B/A HARBORVIEW REHABILITATION AND HEALTHCARE, | ) ) ) ) | |
| Defendant. | ) ) | |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Katrina Friend. As alleged with greater particularity below, the Equal Employment Opportunity Commission alleges that Senior Care Properties, Inc. d/b/a Harborview Rehabilitation and Health Care Center ("Defendant") failed to provide Friend, a qualified individual with a disability, with a reasonable accommodation and discharged her in violation of the ADA.

JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by

1

reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3) and 2000e-6, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and 2000e-6.

4. At all relevant times, Defendant, a North Carolina corporation, has continuously been doing business in the State of North Carolina and the City of Morehead City, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Friend filed a charge with the Commission alleging violations of the ADA by Defendant.

8. On August 8, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. On September 6, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. From around July 2015 until around August 20, 2015, Defendant has engaged in unlawful employment practices at its facility in Morehead City, in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112 by failing to provide reasonable accommodation to Friend and discharging her because of her disability.

13. Friend began working for Defendant as a Certified Nursing Assistant ("CNA") on or about April 20, 2015. Her job duties included assisting nurses with general care of patients, including moving, lifting, and monitoring patients, as well as assisting patients to stand, ambulate, shower, dress, and use the restroom.

14. Friend is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Friend has an impairment, rheumatoid arthritis, ("RA"), an autoimmune disorder which substantially limits the operation of her immune system.

When her condition is not managed through prescription medication, Friend has difficulty picking up or gripping objects, which in turn impairs Friend's ability to safely lift or assist patients with physical tasks.

15. In or around July 2015, Friend was unable to obtain her RA medications. Friend was without her medications for approximately one month.

16. On or about July 28, 2015, Friend called out of work and notified Defendant that she was having trouble with her hands and intended to renew her arthritis medications the next day.

17. On or about July 29, 2015, Friend informed Defendant's Staffing Coordinator that she was experiencing an RA flare-up which was causing severe pain in her hands, was out of medication, could not afford to pay out-of-pocket for the medication, and needed her insurance card from Defendant to refill her prescriptions. The Staffing Coordinator told Friend she should receive her insurance card soon.

18. On or about July 30, 2015, Friend asked the Staffing Coordinator when she could return to work.

19. Friend told the Staffing Coordinator that she, Friend, had numbness in her hands and was still having trouble holding things, but that she would be better once she could get her medication.

20. The Staffing Coordinator told Friend her doctor must sign off on Friend's job description before Defendant would allow Friend to return to work.

21. Friend picked up a printed job description on or around July 31, 2015.

22. On or around August 3, 2015 Friend provided Defendant with a doctor's note stating Friend could work light duty.

23. On or around August 4, 2015, Friend informed the Staffing Coordinator that Friend's doctor recommended that Friend be allowed to work light duty for four (4) weeks, i.e. until September 1.

24. The Staffing Coordinator informed Friend light duty might not be an option because Friend's condition was not a job-related injury.

25. The Staffing Coordinator told Friend she would be in touch to let Friend know about her light duty request.

26. On or around August 4, 2015, Defendant received a copy of the CNA job description with Friend's doctor's signature and two notations: "can do light duty" and "light duty 4 weeks as of 8/4/2015."

27. In or around the first week of August 2015, Friend obtained her insurance card, refilled her prescriptions, and resumed taking her RA medication.

28. Between approximately August 4 and 20, 2015, Friend contacted Defendant multiple times to inquire about light duty work. In response, the Staffing Coordinator said she, the Staffing Coordinator, needed to discuss the request with someone else.

29. Defendant never notified Friend whether her light duty request was approved or denied. Defendant never discussed any other potential accommodation with Friend.

30. Defendant never considered Friend's light duty request or any other potential accommodation.

31. At all times relevant to the allegations in the Complaint, Defendant's policy was to only provide light duty work to employees with job-related injuries.

32. Defendant has a policy of permitting a maximum of two weeks of leave for non-job-related medical conditions to employees who are not eligible for leave under the federal Family and Medical Leave Act.

33. On or about August 20, 2015, Defendant terminated Friend's employment.

34. Defendant sent Friend a letter dated August 20, 2015 notifying her that because she had been absent for more than two weeks due to a non-job-related injury that kept her from performing the duties of the CNA job, her employment was terminated.

35. Friend is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

36. Defendant refused to provide Friend, a qualified individual with a disability, with reasonable accommodation of light duty in violation of the ADA. Defendant also refused to provide Friend, a qualified individual with a disability, with reasonable accommodation of leave, in violation of the ADA.

37. Defendant's refusal to accommodate Friend culminated in the termination of Friend's employment with Defendant on or about August 20, 2015, in violation of the ADA.

38. The effect of the practices complained of above has been to deprive Friend of equal employment opportunities and otherwise adversely affect her status as an employee, because of her disability.

39. The unlawful employment practices complained of above were intentional.

40. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Friend.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against individuals because of their disabilities, including discrimination in hiring, firing, failing to provide reasonable accommodation to qualified individuals with disabilities, and any other employment practice which discriminates on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Friend whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful-place hiring and front pay.

D. Order Defendant to make Friend whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices describe above, in amounts to be determined at trial.

E. Order Defendant to make Friend whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional suffering, inconvenience, humiliation, loss of enjoyment of life, loss of civil rights, and other non-pecuniary losses pain, in amounts to be determined at trial.

F. Order Defendant to pay Friend punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
Equal Employment Opportunity Commission
131 M Street, NE
Washington, D.C. 20507

/s/ Lynette A. Barnes
LYNETTE A. BARNES
N.C. Bar No. 19732
Regional Attorney

YLDA MARISOL KOPKA
Supervisory Trial Attorney
IL Bar No. 6286627
Charlotte District Office
129 W. Trade Street, Suite 400
Charlotte, N.C. 28202


/s/ Zoë G. Mahood
ZOË G. MAHOOD
Senior Trial Attorney
Raleigh Area Office
434 Fayetteville Street, Suite 700
Raleigh, NC 27601
zoe.mahood@eeoc.gov
Phone: (919) 856-4080
Fax:    (919) 856-4156
N.C. Bar No. 21722

**ATTORNEYS FOR PLAINTIFF**